Opinion issued January 12, 2006












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00450-CR




SYNA JOHN HENG, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 938221




MEMORANDUM OPINION
            A jury found appellant, Syna John Heng, guilty of capital murder, and because
the State did not seek the death penalty, the trial court assessed punishment at
confinement for life. In this appeal, we determine whether (1) the evidence was
legally and factually sufficient to show that the appellant was not justified in using
deadly force to defend himself and (2) the evidence was legally and factually
sufficient to show that the appellant was not justified in using deadly force to defend
his property. We affirm.
Statement of Facts
          On February 2, 2003, four young adults got off work at Babin’s seafood
restaurant and reconvened at Bennigan’s restaurant. At that point, the four decided
to attend a party at the Omni Hotel. Torry Davison drove his three friends (Shaun
Messimer, Michael Ciaramitaro, and Monica Valadez) to the party, while they each
left their cars in the Bennigan’s parking lot.
          Davison testified that they left the party around 4:30 a.m., and he drove his
three friends back to their vehicles at the Bennigan’s parking lot. When they arrived
at the parking lot, they saw appellant inside Messimer’s car. Appellant had broken
the driver’s side window and steering column and was attempting to steal the car. 
Messimer pulled appellant out of the car, put him on the ground, and “roughed him
up” a little. After Messimer was unable to start his car, they decided to damage
appellant’s vehicle as payback. Ciaramitaro saw a juvenile inside appellant’s car. He
retrieved the juvenile, who Messimer also punched. Messimer took both appellant’s
and the juvenile’s wallets to get their identifications in case appellant caused them
any more trouble. Messimer kept appellant’s identification, but gave both wallets to
Valadez. 
          Davison broke the window of appellant’s car with a baseball bat, while
Messimer continued to strike appellant. Messimer then ripped off the bumper
molding, slashed all four tires, and kicked numerous dents around appellant’s car to
“even the score.” Messimer also took the bat and broke the back windshield. 
Davison took appellant’s car radio and some of his tires and put them in his car. 
Ciaramitaro took some tires also. They then told appellant and the juvenile to leave
on foot. Appellant and the juvenile walked away. 
          A few minutes later, while Messimer was on his cell phone arranging for a tow,
appellant appeared behind him and shot at him as Messimer turned around. Messimer
fell, but then got up and ran away from appellant. Appellant chased Messimer and
shot at him again. Messimer fled through some bushes toward an interstate road and
collapsed over a freeway retaining wall, where he died of two gunshot wounds.
          Appellant returned to the Bennigan’s parking lot and saw Ciaramitaro. 
Ciaramitaro was inside his own vehicle and trying to start it, but appellant approached
the vehicle and shot three or four times at him through the driver’s side window. 
After shattering the window, appellant reached into the car and shot Ciaramitaro in
the face. Ciaramitaro sustained two gun shot wounds and died in the front seat of his
car. 
          Davison was hidden in the bushes and talking to the police on his cell phone
during these events. Appellant then approached Valadez and demanded his wallet
and identification back. Valadez gave him the wallets, but explained that she did not
have the identification. After unsuccessfully searching Messimer’s car for his
identification, appellant and the juvenile got into appellant’s vehicle and drove off
with the four flat tires. 
          Once the police arrived, they saw Ciaramitaro’s body in his vehicle and
Messimer’s body on the retaining wall. They also found appellant’s Texas
Identification Card on Messimer’s body. They located appellant’s car behind a
nearby shopping mall. Based on the identification card and a positive identification
from a photo spread by Davison and Valadez, the police took appellant into custody
at his friend’s house. Appellant had a black eye and some cuts inside his bottom lip
where his lip was forced against his braces. The police then recovered appellant’s
gun after appellant showed them where he hid it. At the police station, appellant
made a videotaped statement. Appellant admitted shooting Messimer and
Ciaramitaro with the gun.Appellant testified in his defense at trial. Appellant testified that he and the
juvenile were driving around at 4:00 or 5:00 in the morning and that he needed
money. He broke into Messimer’s car to steal it, but the victims arrived while he was
trying to start the car. Appellant testified that the victims beat him up with fists and
a baseball bat and took his wallet. Appellant also saw his vehicle being destroyed by
Messimer and Davison. Appellant and the juvenile were then ordered to leave the
parking lot on foot. Appellant stated that he was angry, felt disrespected, and feared
that the boys would further damage his car. So, appellant took the gun from the
juvenile and went back to the parking lot to get his car. Appellant approached
Messimer, and Messimer asked him if he “want[ed] more.” With Messimer’s fist
balled up and potentially concealing a weapon and the others in the area who might
have had a weapon, appellant shot Messimer because he feared serious injury. Afraid
that Ciaramitaro might use his car as a weapon or might have a weapon in his car,
appellant approached him and shot him in his (Ciaramitaro’s) vehicle. Appellant then
turned to Valadez, took his wallet from her, and threatened to hurt her if she
“snitched.” Appellant testified that he and the juvenile got inside his car and drove
off, despite the flat tires. He admitted that he hid the gun and threw the gun’s
magazine into the bayou. He was later arrested at his friend’s home. 
Sufficiency of the Evidence
          In eight points of error, appellant contends that the evidence was legally and
factually insufficient to prove that he was not justified in using deadly force to defend
(1) himself against both Messimer and Ciaramitaro, or in the alternative, against
Messimer alone or (2) his property against both Messimer and Ciaramitaro, or in the
alternative, against Messimer alone. 
A.      Standards of Review
          Self-defense is a defense, not an affirmative defense. Zuliani v. State, 97
S.W.3d 589, 594 (Tex. Crim. App. 2003). A defendant has the burden of producing
some evidence to support a claim of self-defense. Id. Once the defendant produces
such evidence, the State then bears the burden of persuasion to disprove the raised
defense. Id. The burden of persuasion is not one that requires the production of
evidence; rather, it requires only that the State prove its case beyond a reasonable
doubt. Id. When a fact finder determines that the defendant is guilty, there is an
implicit finding against the defensive theory. Id.
          It is well-settled that, when a defendant challenges the legal sufficiency of the
evidence supporting a fact finder’s rejection of a defense such as self-defense in a
murder case, “we look not to whether the State presented evidence which refuted
appellant’s self-defense testimony, but rather we determine whether after viewing all
the evidence in the light most favorable to the prosecution, any rational trier of fact
would have found the essential elements of murder beyond a reasonable doubt and
also would have found against appellant on the self-defense issue beyond a
reasonable doubt.” Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).
          When a defendant challenges the factual sufficiency of the rejection of a
defense, the reviewing court reviews all of the evidence in a neutral light, and we will
set the verdict aside only if the evidence is so weak that the verdict is clearly wrong
and manifestly unjust, or the contrary evidence is so strong that the standard of proof
beyond a reasonable doubt could not have been met. See Zuniga v. State, 144 S.W.3d
477, 484 (Tex.Crim.App.2004); see also Zuliani v. State, 97 S.W.3d 589, 595
(Tex.Crim.App.2003) (specifically outlining the factual sufficiency standard
concerning jury’s rejection of self-defense).
B.      Self-Defense
          In his first four points of error, appellant complains that the evidence was
legally and factually insufficient to show that he was not justified in using deadly
force to defend himself against both Messimer and Ciaramitaro, or in the alternative,
against Messimer alone. Because the issue of whether appellant was justified in using
deadly force in self-defense is dispositive for each of his first four claims, we will
address them together. 
          To convict for capital murder, the State was required to prove beyond a
reasonable doubt that appellant intentionally and knowingly caused the death of more
than one person during the same criminal transaction. Tex. Pen. Code Ann. §§
19.02(b)(1) & 19.03(a)(7)(A) (Vernon Supp. 2005). Appellant would be justified in 
using deadly force against another if he would be justified in using force under
section 9.31, i.e., if a reasonable person in the appellant’s situation would not have
retreated, and when and to the degree “he reasonably believe[d]” that the deadly force
was immediately necessary to protect himself against the other’s use or attempted use
of unlawful deadly force. Tex. Pen. Code Ann. § 9.32(a) (Vernon Supp. 2005). 
Deadly force is defined as “force that is intended or known by the actor to cause, or
in the manner of its use is capable of causing, death or serious bodily injury.” Tex.
Pen. Code Ann. §§ 9.01(3) & 9.31(d) (Vernon Supp. 2005). In reviewing the claim
of self-defense, the facts and circumstances are viewed from the accused’s
perspective to determine whether deadly force is immediately necessary. Kolliner v.
State, 516 S.W.2d 671 (Tex. Crim. App. 1974).
          Appellant testified that he intentionally and knowingly caused the death of
Messimer and Ciaramitaro, but he contends that he was justified in using deadly force
against Messimer in self-defense. 
          Based on all of the evidence presented at trial, viewed in the light most
favorable to the verdict, we hold that a rational jury could have found the essential
elements of capital murder beyond a reasonable doubt and also could have found
against appellant on his self-defense claim. A rational jury could have concluded that
a reasonable person in appellant’s situation would not have believed deadly force was
immediately necessary to protect appellant from Messimer’s or Ciaramitaro’s use or
attempted use of unlawful deadly force. The jury could also have reasonably believed
that deadly force was not immediately necessary after appellant left the parking lot
on foot. The jury could have concluded that appellant had escaped any danger posed
by the four people in the parking lot, and that he returned for revenge after he had
armed himself. Appellant admitted that, when he returned to the scene, Messimer had
no weapon and appellant did not know whether anyone else had a weapon, appellant
shot at Messimer when Messimer turned around, and he shot at him again after
Messimer ran away. Based on this evidence, a rational jury could have determined
beyond a reasonable doubt that a reasonable person in appellant’s situation would not
have believed deadly force was immediately necessary to protect appellant from
Messimer’s use or attempted use of unlawful deadly force. Likewise, the jury could
have rationally determined that Ciaramitaro, who was sitting in his car trying to start
it when he was shot in the face by appellant, posed no immediate threat to appellant,
and that appellant shot Ciaramitaro because “he felt disrespected,” not because he was
in immediate danger. Therefore, a rational jury could have found that the elements
of capital murder beyond a reasonable doubt and could also have reasonably found
against appellant on his claim of self-defense. As such, the evidence is legally
sufficient.
          After reviewing all of the evidence in a neutral light, we hold that the State’s
evidence, taken alone, is not too weak to support the jury’s finding of guilt and
implicit rejection of appellant’s self-defense claim, and that the proof of appellant’s
guilt is not against the great weight and preponderance of the evidence. The jury was
entitled to decide what weight to give appellant’s testimony that he was afraid of
Messimer because of the earlier beating and that Messimer had a balled up fist when
appellant shot him. Likewise, the jury was entitled to disbelieve appellant’s statement
that he believed that Ciaramitaro was going to use his car as a weapon. Ultimately,
the jury’s rejection of appellant’s self-defense claim hinged upon appellant’s
credibility, which the jury, not this Court, was better positioned to evaluate. If an
issue involves the credibility of a witness, we defer to a trial court’s ruling, as a trial
court is in a better position to evaluate the credibility of witnesses before it. Guzman
v. State, 955 S.W.2d 85, 87, 89 (Tex. Crim. App. 1997).
          Accordingly we hold that the evidence is legally and factually sufficient to
support the jury’s rejection of appellant’s self-defense claim. We overrule points of
error one through four. 
C.      Defense of Property 
          In his fifth through eighth points of error, appellant complains that the evidence
is legally and factually insufficient to show that he was not justified in using deadly
force to protect his property against both Messimer and Ciaramitaro or, in the
alternative, against Messimer alone. Because the issue of whether appellant was
justified in using deadly force to protect his property is dispositive of each of his final
four claims, we will address them together.
          If the accused acted in defense of his own property at the time of the
commission of the alleged offense, then it is a defense to a criminal prosecution. 
Tex. Pen. Code Ann. § 9.41 (Vernon Supp. 2005). Thus, the defense of one’s own
property is a separate Chapter 9 justification for otherwise criminal conduct. The law
regarding defense of property states:
A person in lawful possession of land or tangible, movable property is
justified in using force against, when and to the degree the actor
reasonably believes the force is immediately necessary to prevent, or
terminate the other’s trespass on the land or unlawful interference with
the property.

Tex. Pen. Code Ann. § 9.41(a) (Vernon Supp. 2005). Furthermore,
A person unlawfully dispossessed of land or tangible, movable property
by another is justified in using force against the other when and to the
degree the actor reasonably believes the force is immediately necessary
to reenter the land or recover the property if the actor uses the force
immediately or in fresh pursuit after the dispossession and: 
 
(1)the actor reasonably believes the other had no
claim of right when he dispossessed the actor; or
 
(2)the other accomplished the dispossession by
using force, threat, or fraud against the actor.

Tex. Pen. Code Ann. § 9.41(b) (Vernon Supp. 2005). Additional factors are
necessary before deadly force is justified in protecting property:
A person is justified in using deadly force against another to protect
land or tangible, movable property:
 
                  (1)if he would be justified in using force against the other under
Section 9.41; and 
 
(2)when and to the degree he reasonably believes deadly force
is immediately necessary:
 
(A)to prevent the other’s imminent commission of
arson, burglary, robbery, aggravated robbery, theft
during the nighttime, or criminal mischief during the
nighttime; or
 
                              (B)to prevent the other who is fleeing immediately after
committing burglary, robbery, aggravated robbery, or
theft during the nighttime from escaping with the
property; and

                  (3) he reasonably believes that:
 
                              (A)the land or property cannot be protected or recovered by
any other means; or 
 
                              (B)the use of force other than deadly force to protect or
recover the land or property would expose the actor or
another to a substantial risk of death or serious bodily
injury. 

Tex. Pen. Code Ann. § 9.42 (Vernon Supp. 2005). Thus, in order for appellant to
be justified in using deadly force to protect his property, he must meet all the
elements of sections 9.41 and 9.42. Appellant claims that he was justified in using
deadly force against Messimer because Messimer took his keys and wallet by force,
damaged his car, and then refused to let him leave in his car.
          Based on all of the evidence presented at trial, viewed in the light most
favorable to the verdict, we hold that a rational jury could have found the essential
elements of capital murder beyond a reasonable doubt and also could have found
against appellant on his defense-of-property claim. A rational jury could have
concluded that a person in appellant’s situation would not have reasonably believed
that deadly force was immediately necessary to either (1) prevent the other’s
imminent commission of robbery, theft during the nighttime, or criminal mischief
during the nighttime or (2) prevent the other who is fleeing immediately after
committing the robbery or theft during the nighttime from escaping with the property. 
The jury could have reasonably concluded that any belief that appellant may have had
that deadly force was necessary to prevent the imminent commission of a crime when
appellant was initially confronted at the parking lot no longer existed once appellant
left the parking lot. The jury could have concluded that, at point he left the parking
lot, Messimer’s conduct no longer justified using deadly force to prevent the
imminent commission of a crime under section 9.42(2)(A) because the crimes had
already been committed and were no longer imminent. 
          Also, a rational jury could have concluded that a person in appellant’s situation
would not have reasonably believed that deadly force was immediately necessary to
prevent Messimer from escaping or fleeing with appellant’s property. There was no
evidence that Messimer was attempting to flee the scene after appellant left the
parking lot. Appellant never testified that he returned to the parking lot to prevent the
four people from escaping or fleeing with his property. Indeed, the record shows that
appellant knew that Messimer’s car was unable to start after he broke the ignition
with a screwdriver. It was also unlikely that Messimer would leave in appellant’s car
because it had four flat tires, in addition to the broken-out windows. Thus, the jury
could have reasonably concluded that appellant knew that Messimer was not leaving
the parking lot with appellant’s property. Therefore, the jury could have concluded
that deadly force was not immediately necessary to prevent Messimer from escaping
with appellant’s property. After viewing all the evidence, a rational jury could have
found beyond a reasonable doubt against appellant on his defense-of-property claim. 
Accordingly, the evidence is legally sufficient. 
          Likewise, the jury’s implicit rejection of appellant’s defense-of-property
justification is not against the great weight or preponderance of the evidence and the
State’s evidence is not too weak to support it. A jury could have disbelieved
appellant’s claim that he returned to the parking lot because he was concerned for his
property and concluded that he returned because he was upset and felt “disrespected.”
Such credibility issues are best left to the jury.
          After reviewing all of the evidence in a neutral light, we hold that the State’s
evidence, taken alone, is not too weak to support the jury’s finding of guilt and
rejection of appellant’s defense-of-property claim and the proof of appellant’s guilt
is not against the great weight and preponderance of the evidence. Accordingly, the
evidence is factually sufficient.
          We overrule issues five through eight.
Conclusion
          We affirm the judgment of the trial court.
 
                                                                                                                 Sherry Radack
                                                                        Chief Justice
 

Panel consists of Chief Justice Radack and Justices Alcala and Bland.

Do not publish. See Tex. R. App. P. 47.2(b).